and we'll proceed to the last case of the day. Garcia-Simisterra versus the Attorney General and the lawyers. Okay, Mr. Gonzalez, will you please speak with us? Thank you, Your Honor. Good morning, my name is Irving Gonzalez and I'm representing the petitioner Mr. Beverly Osi Garcia-Simisterra in this case. May it please the court. Our case has to do with whether in fact there is a loss to the victim or victim in an amount in excess of $10,000. Whether the record has reflected such a loss in using the test in Nijuan, a circumstance-specific test. As we've argued in our brief, it does not. There is nothing that proves that the loss to the victim was $10,000 or Here's my problem with this argument. Yes, Your Honor. You can help me. Your argument seems to be premised on the idea that what the board was relying upon was the amount of the disgorgement award, but when I read the record, this is what the board says. The board says we're not persuaded by the respondent's argument. The plea agreement is tied to count two of the criminal information, which specifies that the monetary value involved in the respondent's workers' compensation fraud offense was $100,000 or more. Thus, there's no clear error in the immigration judge's factual finding that the loss to the respondent's fraud offense exceeded $10,000. Your client signed a plea agreement admitting to, now I understand later as part of his cooperation, the government reduces the charge, but he actually signed and therefore admitted to committing a fraud where the offense was $100,000 or more. Why isn't that enough to satisfy this requirement? Judge, with all due respect, I do not believe that that's enough for the reason that even though he did sign a plea agreement, that plea agreement in and of itself, even though the Board of Immigration Appeals, even though the IJ and the government have said that as part of that plea agreement, the charges were going to be reduced from first degree to third degree felonies. First, that's an error because if we look at the plea agreement, and I'm looking at the record, page 148, if we look at paragraph D of the plea agreement, it says the state in exchange for defendant's pleas will reduce the degrees of the counts in paragraph 2A above from first degree felonies to third degree felonies. Paragraph 2A- That's after he's already admitted though as to what he did in terms of the more serious offenses. Oh, I understand, Judge, but paragraph 2A, the reduction, which everybody argues about, has nothing to do with those two offenses, has only to do with a case that was charged- But it's also not the basis for the IJ or the BIA's decision, it seems to me. The point is, this isn't about the disgorgement award. It's based on his admission in the plea agreement that he committed, he actually committed, the more serious offense. That is correct, Judge. He agreed that he committed those two offenses. There's nothing in the plea agreement that says as to what amount he agreed to. There's nothing, and I've looked at the plea agreement, the plea agreement in no point says that there is a loss, what the amount to the victim is. The plea agreement in no point says that it was over this amount, it was a certain amount. All the plea agreement says that he will be pleading to a violation, and again, I'm referring to 148 section 2B of Florida statute 896.1013A and Florida statute 44.1054B5. That's all. It's very simple in the plea agreement. It does not say anything as to an amount, and that's why we're arguing that there is no amount. But the plea agreement has to be read in conjunction with what the charges were, that he was agreeing to plead, that he had actually committed, right? That is correct, Your Honor. And what do the charges say? Well, the charge says that it's, one of the charges says it's a crime over $100,000. Okay, that's when he's admitting he did. He's admitting that he committed the fraud. He's not admitting to the amount of... Well, that's what's charged. He's admitting that he did what was charged, right? That was charged, but as we know, Judge, in many occasions, there is something that's charged. Many times charges are inflated as to amounts. Yeah, but here's the quote from the plea agreement. Defendant shall plead guilty to, and then it specifies the accounts, in the information filed in case number. He agreed to plead guilty to that charge, including that amount. There's no reservation as to the amount. Your Honor, I believe unless there's more proof as to the amount, that he is not pleading guilty to that amount. He's pleading guilty to the commission of those crimes. The amount is an amount to be determined. Let me ask the question this way then. What do you suppose the parties meant when they put into the plea agreement this language that pursuant to this agreement, the defendant will cooperate with the state of Florida as set forth below, blah, blah, blah. Defendant's sentence is a withhold of adjudication, three years reporting probation with the special condition of disgorgement of criminal proceeds in the amount of $104,662. Why did they reference that amount at all in this plea agreement? The reason that amount was referenced, Your Honor, is because there was $104,000 confiscated from a co-defendant's car. Those, there was never any proof. There's nothing in the record to show that that $104,000 had anything to do with the perpetrated fraud against the insurance companies. If we remember, this is a case where there was a scheme, a corporation was set up, an amount of workers' compensation was obtained so that bids could be placed with general contractors for construction work. Those checks were then cashed at check cashing stores, which is part of this whole conspiracy, part of this crime. And the monies that were found cannot be related back to saying that I went to the insurance company and I took $104,000. Those are the proceeds from those checks being cashed and the percentage. And if I'm not mistaken, what the case agent testified to before Judge Slaven- Yes. Yes, Your Honor. That is my argument because there's been plenty of case law that has shown that a disgorgement amount has to do with a defendant not being able to profit from an illegal activity. And this is the profit. It's, for instance, if I were to steal $200 from somebody, I've made them, the loss to that person is $200. I've now invested that $200 for whatever reason, and I've made $10,000 out of it. That $10,000 isn't the loss to the victim, the $200 is. There would be a disgorgement of that other amount. And in fact, the disgorgement, which should go to the aggrieved party, again, I don't believe there's anything in the record that shows that that disgorgement went to those insurance companies or to anyone else, but that the county sheriff's office- Let me ask you a question in a slightly different way. Don't we generally understand the idea of disgorgement to being a form of restitution measured by the defendant's wrongful gain? Isn't that exactly what disgorgement means? Well, disgorgement is a wrongful gain, but it's not the loss to, and that's the statute here. Asking whether disgorgement is understood to be a form of restitution measured by the defendant's wrongful gain. It is, Your Honor. In fact, it's an equitable form, and I filed a supplemental case this morning with the court that I only found last night, which speaks about disgorgement. It's a Supreme Court case that was an 8-1 case. Justice Sotomayor wrote the opinion, and she goes into disgorgement and how disgorgement is an equitable remedy. Disgorgement has nothing to do with the actual loss to a grieved party. We believe, Your Honors, that this is a case where the government has not been able to establish the threshold of $10,000. There is language, but the facts of the case don't lend themselves to the loss to the aggrieved party. That disgorgement is not a loss. If it were a loss and there was a disgorgement, he wouldn't even have to sign anything. If the government claims that I stole $200 from you or $10,000 or whatever amount it is, I don't have to sign that I'm giving it back to you. It doesn't belong to me. What he's signing here is any right that he may have had to those monies. But again, there's nothing in the record that says that those monies come from in any way defrauding the insurance companies. I see that my time has run out, and I've saved five minutes for rebuttal. If the Court has any other questions, I'd be more than happy to answer them at this time. Thank you, Mr. Gonzalez. Ms. Browning. Thank you, Your Honors. May it please the Court, Rachel Browning for the U.S. Attorney General. As Judge Pappar pointed out, because the indictment in this case states that the monetary value of Petitioner's fraud was $100,000 or more, and further record evidence indicates that the entire scheme to which Petitioner acted as an aider and abetter, in fact, involved millions of dollars in losses and unpaid premiums. And under the circumstance-specific approach, the agency properly held that the government more than met its burden in establishing removability. Again, to the extent that Petitioner's sentence was reduced due to his cooperation, that doesn't change the fact of what he pled to, which was a fraud involving at least $100,000 in monetary value, which the State Court of Florida refers to as monetary loss. And secondly, it's important to note that he is an aider and abetter. So even if the Court were to accept that the sentence agreement somehow reduced the amount of money, he's still responsible for the entire scheme. And if you look further into the record, the judge, the board didn't rely on the testimony that was presented, but the judge did. And under the circumstance-specific approach, you can look at this so long as it's... I have a question about, he has to be removable for a conviction, right? Correct. And when we determine what a conviction is, do we look at both what the indictment charge he pled to and what he was sentenced for? Because if you look at the sentencing documents here, the subsection in the sentencing documents is a different subsection of the statute. I'm not suggesting what the outcome is, I'm just trying to follow what is the... My first determination is what is the conviction here, right? Correct. Okay. And so what charge was he actually convicted of? And when we look at what he's convicted of, do we have to look at what the sentence was for? The sentencing documents here have a different subsection. I recognize that. Right? Correct, Your Honor. They have the subsection for the third degree felony. I don't know what this means, I'm just trying to understand the facts first, and then I can get to what we have to decide. Certainly, Your Honor. But the conviction here takes into account the sentence, right? And his sentence was for a third degree felony, and the sentence references a different subsection than the... Excuse me, indictment. Actually, I don't think there's an indictment, there's an information. Is that correct? Correct. Yeah, and it's focused. Okay. All right. So we have an information, it's still the same thing. He's got a charge, he pled to it. I agree with that. And if you look at the plea agreement, it doesn't have the third degree felony one, but the sentence does reference that. Is that correct? The sentence references the third degree felony, as well as the conviction as an aider and abetter. And so I believe when you're talking about the circumstance-specific approach to an amount, the threshold of $10,000... Let's back up, Ms. Browning. Isn't the simple answer to Judge Hull's question is, yes, the conviction that counts is that third degree felony count, right? But Nishiwan, the decision of the Supreme Court, and Nishiwan says that you can look at to the facts, that you can look to the particular circumstances. And that's what allows you to look at his admission where he signs in the plea agreement that he committed the conduct that would form the basis for the first degree felony offense. Is that right? That's the theory? Correct. This is an admission of an amount of money that can be considered when determining whether the fraud involved at least $10,000. I think Judge Hull was trying to focus on the point that for purposes of the qualifying conviction, it's the third degree felony that we're talking about. But the decision of the Supreme Court in Nishiwan says that the agency was entitled to look at the facts, right? Unlike your usual categorical approach case. Exactly. Because you're seldom going to have a federal statute or any statute that's going to refer to a specific amount of money. Well, he has to get better than me. I was going to get to that. But I was trying to figure out what the conviction was here. Thank you. So, is the conviction a third degree felony? Anyway, you've now answered my questions. Thank you. And as far as the disgorgement amount, I think, you know, the government is not, would agree that it is not necessarily always compensatory, or knowing so far as it could establish loss in and of itself. But I do think in this case, it speaks to the scheme. I mean, this is an read what the board and the IJ were doing. They weren't focusing on the disgorgement amount. They were focusing on what the plea agreement said. Correct. Correct. It seems to me that to the extent that you want to tie this to the disgorgement award, you're undermining. No, I was simply addressing what counsel has said before. But no, I think you're correct. I mean, the board doesn't rely on it. It just knows that, you know, the immigration judge does. And I'm not entirely sure that that's right either. When I read what the immigration judge said, it's not entirely clear to me that the judge's decision is not a model of clarity, I would. Yeah. Right. But there was a lot of testimonial evidence from the, the actual workers compensation investigator, who did speak more to petitioner specific role in the scheme, noting that, you know, right, but in this case, the on the records documentary evidence, right? Correct. And that's what we're to focus on, right? Yes, but there is documentary evidence of, right, right. The investigators findings. And, and what, you know, what led to the indictment itself, or in the charges, and why that $100,000 amount is significant. And further supports the agency's findings. So and this is, I would just add, this is a, you know, substantial evidence review, when we're talking about the loss of amounts, which would be different than a normal de novo review of a criminal statute, whether it's from constitutes removable statute. Yeah, I have another question. So we're talking about a definition of aggravated felony. And the removal is, I guess, is for a conviction if it involved fraud or deceit in which the loss to the victim of victim is seeds $10,000. Correct. So is your definition is not for I mean, is for over 5000 or whatever it is three but not greater than 20. And so it's involved is is that because that's a broad term, as opposed to based on or that doesn't matter? Well, the involved language goes to whether it's fraud. So there's a Supreme Court case Kawashima, where they addressed whether you have to have like an intent to defraud in order for it to be a fraud. So I don't read the involved. I don't know that a court is addressed whether involved modifies involved modifies fraud. Correct. Um, that's how I understand it. And and again, you have a conviction for fraud. And underneath your one, you can look outside that record of conviction to determine the loss. And so long as that's tied to the conviction, that is okay. And in this case, what we're saying is that there's a conviction for fraud. He admitted in his admission in his plea agreement. As a condition of getting this reduced sentence, he admitted what is count two of the information and involved over $100,000 in exchange for three years of probation and the payment of $104,000 in discourage. But even the third degree felony is something that's less than 20,000. So you could have a third degree felony that qualified because it's over 10,000. If the record evidence indicated it, certainly. Yeah, right. So, so really, is it in and of itself? Okay. I think I understand it better now. Thank you. Welcome. There are no further questions. I believe the government has met its burden, we would ask that you uphold the board's decision and deny the petition for review. Thank you. Thank you, Miss Browning. We always appreciate time being returned to us. Mr. Gonzalez, you've saved five minutes for rebuttal. Thank you, Your Honor. Yes, going to Judge Hall's point that you were just making, Your Honor. Yes, the statute under which he was convicted of a third degree felony carries an amount that could be up to $20,000. But again, looking at everything in the case, using the Nishwan case and looking at a circumstance-specific approach to this case, yes, the indictment says one thing. The indictment, all that has to be proven in the indictment is that he in fact committed the crime. I'm sorry, Your Honor, the information, I misspoke. The information was never an indictment. The information provides, if you do A, you commit this crime. If you do B, you commit this crime. Then at sentencing, it's based on the amount of loss, the amount of the fraud. The problem is he signs a plea agreement that admits that to the information, to the account and the information of the first degree felony that charged, he admitted, he signed, it involved more than $100,000 lost to the victim. He did, Your Honor, but that was never established in there. At sentencing, it was sentenced to a different amount. With all due respect to my esteemed counsel, it really doesn't have to do with the plea agreement. He signed it and agreed to it, right? It doesn't matter what the final sentence was based on. Your Honor, with all due respect, I think as part of the circumstance-specific approach, I think the government needs to look at everything. The government needs to look at what was in the plea agreement. The government also needs to look at what he was ultimately sentenced to. There's a reason why he was sentenced to an amount that's lower. I understand that the Board of Immigration- It could be 3 to 20, so it might be there. And Nijhuan says you can look to the particular circumstances. And he admitted that he had committed an offense. They had actually committed an offense that involved more than $100,000. Yes, Your Honor, but something happened between- Our point is something happened which is not in the record. Something happened between the time that he signed that plea agreement and the time of sentencing. And I know my esteemed counsel referred to that as part of the plea agreement, those charges were going to be reduced to a third-degree felony. But if you look at the plea agreement, that's not the way it's written. The plea agreement refers to another charge in case 13-1341 where it says, again, I'm referring to page 148 of the plea agreement, which was prepared by the state of Florida, Broward County. D, the state in exchange for defendant's pleas will reduce the degrees of the count in paragraph 2A above from first-degree felonies to third-degree felonies. Paragraph 2A has nothing to do with a violation of Florida Statute 896-101 or Florida Statute 44.105. It has to do with the violation of Florida Statute 56125, which is the unlicensed money service business. That's all that was agreed to at the plea agreement. So what we're arguing, Your Honor, is that the court and the Board of Immigration Appeals didn't look at this properly. It's not tied. His sentence is not tied to the plea agreement. His sentence is tied to something that we believe happened between that time. The government may not have been able to approve $100,000 amount. That's why the government kept arguing this disgorgement amount. The government tried to argue today that this disgorgement amount has to do with the actual loss. And there's enough case law, there's enough Supreme Court law that says a disgorgement amount is so that you don't profit from illegal activity. It's not the law. In your view, Gonzalez, was the error that the BIA made an error of law or a finding of fact? Judge, I believe it was an error of law because they did not have the facts. They could not rely on anything in the record to say that the amount of loss was over $100,000. The reason I raise the question is it looked to me like there was a agency on this question. And we review the finding of fact in a way that we say it's the administrative findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. And if that indeed is the appropriate standard to fact finding, which is what is at issue here, then it seems to me we'd be hard pressed to say that the administrative agency couldn't look at the plea agreement and what he admitted to and come away with the sense that the fraud involved $104,000. So your argument has to be it's a matter of law, not fact. And if that's the case, what's the issue of law here? Because it looks to me like it's an issue of fact. Well, Judge, the issue of law is, and I think the Nijuan case referred to this as well, when we're talking about a statute that has to do with a fraud or defeat, and we get to that $10,000 amount, this is a de novo review because the law was misapplied in this case. There is no law that can be established of a certain amount of money. And again, law, the law specifically provides that when we're talking about disgorgement, the phrase is, or the word is a very particular word. Disgorgement is a word that's been used, is a remedy that's been used, an equitable remedy that's been used since the 1800s, if not before. And that specifically has nothing to do with a loss. And that's why I believe that the law was misapplied because there is not a loss in that amount. Disgorgement cannot be a law. Okay. Mr. Gonzalez, I think we understand your case and appreciate it. So that's the last case for the morning. And we will stand in recess until tomorrow morning.